1

2

3

**FILED**

**FEB 1 4 2003**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                              DEPUTY CLERK

4

5

6

7

8                 UNITED STATES DISTRICT COURT

9                 EASTERN DISTRICT OF CALIFORNIA

10                      ----oo0oo----

11  UNITED STATES OF AMERICA,
                                    NO. CR. S-99-0433 WBS
12            Plaintiff,

13       v.                         MEMORANDUM AND ORDER RE
                                    DEFENDANT HOANG AI LE'S MOTION
14                                  TO DISMISS BASED ON DOUBLE
                                    JEOPARDY AND DUE PROCESS
15  HOANG AI LE, et. al.

16            Defendants.

17                      ----oo0oo----

18       Defendant Hoang Ai Le is one of seven defendants named

19  in this indictment.  Le now moves to dismiss his indictment on

20  the grounds that his rights have been violated under the Double

21  Jeopardy Clause and the Due Process Clause.[1]

22  I.   Procedural Background

23       In the indictment currently before this court, Le has

24  been charged with the following:

25  _____

26       [1]   Co-defendant John That Luong has joined this motion to
    dismiss.  Luong has adopted Le's arguments in full and brings no
27  additional arguments of his own.  Luong also notes that there are
    no factual differences between his case and Le's case that are
28  material to the analysis of this motion.

                              1

                            404

- Count One: Conspiracy to commit a robbery affecting interstate commerce in violation of 18 U.S.C. § 1951(a),[2] during the robbery of Phnom Pich Jewelry on January 25, 1996.
- Count Two: Use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1), during the robbery of Phnom Pich.
- Count Three: Causing a death through the use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(i)(1) and (2), during the robbery of Phnom Pich.
- Count Eight: Conspiracy to commit a robbery affecting interstate commerce in violation of 18 U.S.C. § 1951(a), during the robbery of Diamond Flower Electric Instruments ("DFI") on January 20, 1996.
- Count Nine: Use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1), during the robbery of DFI.

In an earlier case in the Northern District of California, CR 96-0094, Le was indicted and tried on seven counts.  Counts One and Two are as follows:

- Count One: Participating in the affairs of a racketeering enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §

---

[2]    18 U.S.C. § 1951(a) is part of the Hobbs Act, which prohibits robbery or extortion, or an attempt or conspiracy to rob or extort, causing the obstruction or delay of, or an effect upon, interstate commerce.

1     1962(c).

2     •     Count Two: Conspiracy to participate in the affairs of
3           the enterprise through a pattern of racketeering
4           activity in violation of 18 U.S.C. § 1962(d).

5           Count One of the Northern District indictment charged
6     that Le "unlawfully and knowingly did conduct and participate,
7     directly and indirectly, in the conduct of the affairs of the
8     below described enterprise, through a pattern of racketeering
9     activity . . . consisting of racketeering acts one through
10    fifteen . . . ."  Racketeering Act One describes a conspiracy to
11    commit Hobbs Act robberies of computer chip companies:

12          Beginning at a time unknown but no later than January
            1, 1995 and up until approximately April 9, 1996, in
13          the Northern District of California, the Eastern
            District of California, the Central District of
14          California, the Southern District of California, the
            District of Oregon, and the District of Minnesota, and
15          elsewhere, . . . Hoang Ai Le . . . did knowingly agree
            and conspire to obstruct, delay, and affect commerce,
16          and the movement of United States currency and
            merchandise in commerce, by armed robbery and by
17          threatening physical violence against another person,
            to wit: employees of various computer chip companies,
18          which do business in foreign and interstate commerce as
            defined under 18 U.S.C. Section 1951(b)(3) in violation
19          of 18 U.S.C. Sections 1951(a).

20    Count Two incorporates the racketeering acts one through fifteen
21    by reference.

22    II.   Discussion

23          A.    Double Jeopardy

24          Under the Double Jeopardy Clause, no person shall be
25    twice put in jeopardy of life or limb for the same offense.  U.S.
26    Const. amend V.  The Double Jeopardy Clause has been interpreted
27    to contain two prongs.  First, double jeopardy prohibits
28    successive prosecution of the same offense.  Blockburger v.

                                    3

1 United States, 284 U.S. 299, 304 (1932).  Second, double jeopardy
2 prohibits multiple punishment for the same offense.  See United
3 States v. Ursery, 518 U.S. 267, 273 (1996).  Two crimes do not
4 constitute the same offense if each crime requires proof of an
5 additional element that the other crime does not require, even
6 though some of the same facts may be necessary to prove both
7 crimes.  See Blockburger, 284 U.S. at 304 ("A single act may be
8 an offense against two statutes; and if each statute requires
9 proof of an additional fact which the other does not, an
10 acquittal or conviction under either statute does not exempt the
11 defendant from prosecution and punishment under the other.")
12 (internal quotation omitted).

13             1.  Successive prosecution

14       First, Le seeks a dismissal of Counts One and Eight on
15 the grounds that this indictment is a successive prosecution
16 barred by the Double Jeopardy Clause.  Specifically, Le argues
17 that Counts One and Eight of this indictment "charge[]
18 conspiracies to commit Hobbs Act robberies which are the same
19 conspiracy charged in Counts One, Two, and Three" of the Northern
20 District indictment.  (Def.'s Mot. at 13:13-15.)

21       This argument is fundamentally unsound.  At the outset,
22 Le was not charged in Count Three of the indictment in the
23 Northern District, making that count irrelevant to this
24 successive prosecution analysis.  More important, Counts One and
25 Two of the Northern District indictment did not charge Le with
26 "conspiracy to commit Hobbs Act robberies."  Rather, Counts One
27 and Two of the Northern District indictment charged Le with
28 committing a RICO violation "through a pattern of racketeering

1 activity . . . consisting of racketeering acts one through
2 fifteen." "Conspiracy to commit Hobbs Act robberies" is merely
3 one of those fifteen predicate acts constituting the pattern of
4 racketeering activity in the RICO violation.

5          The cases are clear that the Fifth Amendment "allow[s]
6 prosecution of a defendant once for a RICO conspiracy and
7 thereafter for the predicate offenses constituting a pattern of
8 racketeering activity."   Saccoccia, 18 F.3d at 798; see also
9 Rone, 598 F.2d at 571-72; Esposito, 912 F.2d at 65 ("A
10 consequence of our conclusion that the prosecution for the RICO
11 charge does not signify that defendant was prosecuted for the
12 conduct constituting the predicate acts of racketeering activity
13 . . . is that the two offenses may be the subject of successive
14 prosecutions.").

15          Applying the rule in Rone and Saccoccia, Le is not
16 being subjected to impermissible successive prosecution for the
17 same offense.  In the Northern District, Le was prosecuted for
18 the offense of racketeering.  Here, Le is being prosecuted for
19 the offense of conspiracy to commit robberies of Phnom and DFI in
20 violation of the Hobbs Act.  Even if these conspiracies to rob
21 Phnom and DFI are predicate acts to the Northern District RICO
22 charge, and it is not entirely clear that they are, the
23 government may still constitutionally prosecute those predicate
24 acts.

25          United States v. Stoddard, 111 F.3d 1454 (9th Cir.
26 1997) does not compel a different result.  Le cites Stoddard for
27 the proposition that "double jeopardy bars the government from
28 dividing a single conspiracy into separate charges and pursuing

1 successive prosecutions against a defendant."  Stoddard, however,
2 is distinguishable.  In Stoddard, the defendant faced multiple
3 conspiracy counts charging violations of the same conspiracy
4 statute.  In that case, the defendant was first charged with
5 conspiring to distribute cocaine between 1989 and 1990 in
6 violation of 21 U.S.C. § 846.  Thereafter, the defendant was
7 charged with conspiring to distribute cocaine between 1985 and
8 1995, also in violation of 21 U.S.C. § 846.  Thus, the Stoddard
9 court faced the task of determining whether, for double jeopardy
10 purposes, the two section 846 conspiracy counts constitute the
11 "same offense."  Here, Le is not facing counts charging
12 violations of the same statute.  The Northern District indictment
13 charged Le with violations of 18 U.S.C. § 1962, while the Eastern
14 District indictment charges Le with violations of 18 U.S.C. §
15 1951(a).  Hence, this court is not facing a Stoddard situation.

16      Accordingly, the prosecution of Counts One and Eight in
17 the instant indictment does not constitute a successive
18 prosecution barred by the Double Jeopardy Clause.

19      2.   Multiple Punishment

20      Le also contends that "he has already been punished for
21 the overall Hobbs Act conspiratorial conduct which was charged
22 [in the Northern District], and which is also charged in this
23 case."  Specifically, Le contends that his sentence in the
24 Northern District case was calculated based on his role in the
25 "overall conspiracy to commit Hobbs Act robberies."

26      This claim is susceptible to essentially the same
27 analysis as Le's successive prosecution claim.  The Ninth Circuit
28 has held that "there is nothing in the RICO statutory scheme

6

1 which would suggest that Congress intended to preclude . . .
2 consecutive sentences for a RICO offense and the underlying or
3 predicate crimes which make up the racketeering activity." Rone,
4 598 F.2d at 571-72. In Rone, the court rejected the defendants'
5 argument that they were subject to multiple punishment because
6 they were serving consecutive sentences for a substantive RICO
7 violation and for the extortion offenses that were predicate acts
8 in that RICO violation. The court noted that "Congress clearly
9 intended the [RICO] Act to provide for new penal prohibitions and
10 enhanced sanctions. If we were to accept appellants' theory that
11 sentences imposed under RICO and those imposed for the predicate
12 offenses may not run consecutively, then Congress' purpose would
13 be thwarted." Id. at 572.

14          Similarly, Le's argument that he is facing multiple
15 punishment is unavailing. Even assuming that the robberies at
16 issue in this indictment were considered in Le's sentencing in
17 the Northern District, the punishment in that case was for the
18 offense of racketeering, not the offense of conspiring to commit
19 Hobbs Acts. Accordingly, the instant indictment does not subject
20 Le to the possibility of multiple punishment for the same
21 offense.

22          3.    Collateral Estoppel

23          Finally, Le argues that the government is collaterally
24 estopped from prosecuting him on Counts Eight and Nine due to his
25 acquittal of a RICO violation in the Northern District. The rule
26 of collateral estoppel "is embodied in the Fifth Amendment
27 guarantee against double jeopardy." Ashe v. Swenson, 397 U.S.
28 436, 443 (1970). Establishing collateral estoppel analysis in

                                7

1 criminal cases require a three-step inquiry:

2      First, the issues in the two actions are identified so
       that we may determine whether they are sufficiently
3      similar and material to justify invoking the doctrine.
       Second, we examine the first record to determine
4      whether the issue was fully litigated.  Finally, from
       our examination of the record, we ascertain whether the
5      issue was necessarily decided.

6 United States v. Schwartz, 785 F.2d 673, 681 (9th Cir. 1986)

7 (citing United States v. Hernandez, 572 F.2d 218, 220 (9th Cir.

8 1978)).  "[T]he criminal defendant claiming that collateral

9 estoppel applies has the burden of proving what issues were

10 decided in his favor at the prior trial.  Since the doctrine of

11 collateral estoppel applies only to matters actually litigated,

12 it is imperative that the party claiming estoppel adequately show

13 the controlling facts of the prior litigation."  United States v.

14 Lasky, 600 F.2d 765, 769 (9th Cir. 1979).

15      Here, Le fails to carry his analytical burden at the

16 very first step.  Specifically, Le has failed to identify the

17 issues litigated in the Northern District action that are

18 allegedly identical to the issues raised in Counts Eight and

19 Nine.  Because Le has failed to identify any such issues, the

20 court is also unable to determine whether those issues were fully

21 litigated in the previous action, and whether those issues were

22 decided in his favor.  Accordingly, the court must deny Le's

23 motion to dismiss on the basis of collateral estoppel.

24      B.    Due Process

25           1.    "Unlawful Manipulation" of Charges

26      Le argues that his indictment should be dismissed on

27 due process grounds because "the government has unlawfully

28 manipulated the offenses to charge multiple indictments."

8

According to Le, "rather than proceeding on one indictment in the Northern District of California, the government [has] broken up the conduct into separate conspiracies and charged these separate conspiracies in the Northern District of California, Eastern District of California, and Central District of California." Le also contends that the government should have "proceed[ed] on one indictment of conspiracy in the Northern District" so that Le need not go through a second trial and be "far from his family members who reside in San Francisco." The court is aware of no authority indicating that the Due Process Clause requires the United States Attorney in this district to refer alleged criminal violations committed within its boundaries to the United States Attorney in another district for prosecution as a single overall Hobbs Act conspiracy charge. This government is fully entitled to separately prosecute alleged criminal violations committed in different districts, even at the expense of separate indictments and separate trials. Accordingly, the court will deny this due process claim.

## 2. Prejudicial Pre-Indictment Delay

Le also contends that his due process rights have been violated as a result of excessive pre-indictment delay. The Due Process Clause guarantees criminal defendants a right against oppressive and prejudicial pre-indictment delay. See United States v. Lovasco, 431 U.S. 783, 789-90 (1977). To show a due process violation resulting from pre-indictment delay, the defendant must satisfy a two prong test. Id. at 789. First, the defendant must have suffered actual, non-speculative prejudice from the delay. Id. Second, the pre-indictment delay, when

9

1  weighed against the government's reasons for it, must "offend[]
2  those fundamental conceptions of justice which lie at the base of
3  our civil and political institutions."  Id.; United States v.
4  Sherlock, 962 F.2d 1349, 1353 (9th Cir. 1989).

5          To establish prejudice, Le claims that 1) "his defense
6  has been prejudiced by the fact that he suffered related felony
7  convictions in the Northern District of California"; 2) "witness
8  memories have faded making it exceedingly difficult to prepare a
9  defense"; and 3) "delay has contributed to locating [sic]
10  independent witnesses to the events in question."  These
11  generalities are insufficient to establish actual prejudice.  See
12  United States v. Moran, 759 F.2d 777, 782 (9th Cir. 1985) ("The
13  defendant has a heavy burden to prove that a pre-indictment delay
14  caused actual prejudice: the proof must be definite and not
15  speculative, and the defendant must demonstrate how the loss of a
16  witness and/or evidence is prejudicial to his case.").  As to
17  Le's first claim, Le does not explain specifically how the
18  Northern District felony convictions will prejudice his defense.
19  Nor can Le reasonably argue that the pre-indictment delay caused
20  him to be convicted in another jurisdiction.  As to Le's second
21  and third claims, he fails to describe with specificity the
22  identities of the alleged missing witnesses, the nature of the
23  loss of memory of witnesses, and how this loss of evidence
24  impacts his case.  Without more, Le cannot establish that pre-
25  indictment delay caused him to suffer actual, non-speculative
26  prejudice.

27          Second, Le has not shown that the delay in this case
28  offends "fundamental conceptions of justice" when weighed against

10

the government's reasons for the delay.  Here, forty-four months
passed between the commission of the last act charged in the
indictment and the indictment.  Le claims that the government had
no justification for this delay other than to "gain a tactical
advantage over the defendants."  The government submits, however,
that this delay was due to the government's need to conduct a
thorough investigation in light of the number of defendants, the
number of victims, the complexity of the alleged crimes, and the
severity of the charges.  Weighing the government's reasons
against the length of this delay, the court concludes that this
delay does not violate any "fundamental conceptions of justice."
Accordingly, Le is unable to show a due process violation as a
result of pre-indictment delay.

     IT IS THEREFORE ORDERED that:

   1.   defendant Hoang Ai Le's motion to dismiss indictment
based on double jeopardy be, and the same hereby is, DENIED.

   2.   defendant Le's motion to dismiss indictment based on
violation of due process be, and the same hereby is, DENIED.[3]

DATED: February 13, 2003

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

   [3]   Accordingly, these motions are also denied as to co-
defendant Luong.

11

United States District Court
for the
Eastern District of California
February 14, 2003


* * CERTIFICATE OF SERVICE * *


2:99-cr-00433


USA

    v.

Luong

_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  February 14, 2003, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.


      William Sze Wong                          SH/WBS
      United States Attorney
      501 I Street
      Suite 10-100
      Sacramento, CA  95814

      Patrick Hanly
      United States Attorney
      501 I Street
      Suite 10-100
      Sacramento, CA  95814

      Richard B Mazer
      Law Offices of Richard B Mazer
      99 Divisadero Street
      San Francisco, CA  94117

      Jan David Karowsky
      716 19th Street
      Suite 100
      Sacramento, CA  95814-0710

      Gail R Shifman
      Law Offices of Gail Shifman
      632 Commercial Street
      Second Floor

San Francisco, CA  94111

Shari G Rusk
Law Offices of Shari Rusk
1710 Broadway
Suite 111
Sacramento, CA  95818

Jeffrey L Staniels
Federal Defender
801 K Street
Suite 1024
Sacramento, CA  95814

Michael Bradley Bigelow
Law Offices of Michael Bradley Bigelow
428 J Street
Suite 358
Sacramento, CA  95814-6908

James Ralph Greiner
Law Offices of James R Greiner
555 University Avenue
Suite 290
Sacramento, CA  95825

George C Boisseau
Law Offices of George C Boisseau
50 Santa Rosa Avenue
Fifth Floor
Santa Rosa, CA  95404

Jack L. Wagner, Clerk

BY: _____
    Deputy Clerk