FILED

FEB 14 2003

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
            DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----ooOoo----

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>    v.<br><br>HOANG AI LE, et. al.<br><br>            Defendants. | NO. CR. S-99-0433 WBS<br><br>MEMORANDUM AND ORDER RE<br>DEFENDANT HOANG AI LE'S MOTION<br>TO SUPPRESS EVIDENCE FROM<br>WIRETAPS |

----ooOoo----

Defendant Hoang Ai Le is one of seven defendants named in this indictment.[1] The wiretap investigation in this case began on August 5, 1995 and continued until April 8, 1996. During that period, wiretaps were authorized pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968 as amended by the Electronic Communications Privacy Act of 1968, 18 U.S.C. § 2510, et seq, by judges in the Northen District of

---

[1] Defendants John That Luong, Thy Chann, and Minh Huynh have joined this motion to suppress. Chann and Huynh appear to have adopted Le's motion in full and do not bring particularized arguments of their own. Luong reiterates Le's arguments and offers additional evidence.

405

California, the Central District of California, and the Eastern District of New York, and by the undersigned judge in the Eastern District of California.[2]  Defendant requests a <u>Franks</u> hearing on his claims that the wiretap affidavits contained false and misleading statements.  Defendant also moves to suppress evidence from intercepted wiretap communications on the grounds that: (1) the investigative goals of the wiretaps authorized in this case were so broad as to render 18 U.S.C. § 2518 a nullity; (2) the wiretaps were being used for their evidentiary advantages; and (3) requisite necessity for the wiretap extensions was lacking.

I.  <u>Applicable Law</u>

"Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520, permits law enforcement officials to engage in electronic surveillance if certain privacy safeguards are observed." <u>United States v. McGuire</u>, 307 F.3d 1192, 1196 (9th Cir. 2002).  A wiretap applicant must provide, among other things, "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c).  Before authorizing a wiretap, a judge must make several statutorily-required findings of probable cause, including a determination that "normal investigative procedures have been tried and failed or reasonably appear unlikely to

---

[2]  Defendants have not provided the court with the wiretap applications and accompanying affidavits from the Central District of California or the Eastern District of New York.  The court will therefore assume that defendants are not moving to suppress any evidence resulting from those wiretap authorizations.

2

succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(b).

The purpose of these "necessity requirements" is "to ensure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." United States v. Blackmon, 273 F.3d 1204, 1207 (9th Cir. 2001). While wiretaps should not be the initial step in an investigation, law enforcement officers need not exhaust every possible investigative alternative before obtaining a wiretap. McGuire, 307 F.3d at 1196-97. The Ninth Circuit "has adopted a 'common sense approach' in which the reviewing court uses a standard of reasonableness to evaluate the government's good faith effort to use alternative investigative means or its failure to do so because of danger or low probability of success." Blackmon, 273 F.3d at 1207.

A "judge authorizing a wiretap has considerable discretion." United States v. Brone, 792 F.2d 1504, 1506 (9th Cir. 1986). Accordingly, a court reviewing a wiretap authorization must use an abuse of discretion standard. Id. A court should uphold a wiretap, if "[l]ooking only to the four corners of the wiretap application . . . there is a substantial basis for these [statutorily-required] findings of probable cause." United States v. Meling, 47 F.3d 1546, 1552 (9th Cir. 1995).

II. Franks Hearing

Under Franks v. Delaware, 438 U.S. 154 (1978), a defendant is entitled to an evidentiary hearing regarding the veracity of an affidavit supporting an application "if he can

3

make a substantial preliminary showing that the affidavit contain[ed] intentionally or recklessly false statements, and . . . [that] the affidavit purged of its falsities would not be sufficient to support a finding of probable cause." Id. at 1553 (internal quotation and citation omitted). The Title III necessity requirement is "material to the issuance of a wiretap order and [is] subject to Franks." United States v. Ippolito, 774 F.2d 1482, 1485 (9th Cir. 1985).

A defendant must satisfy five requirements in order to be entitled to a Franks hearing: "'(1) the defendant must allege specifically which portions of the warrant affidavit are claimed to be false; (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of proof, including affidavits, must accompany the allegations; (4) the veracity of only the affiant must be challenged; [and] (5) the challenged statements must be necessary to find probable cause.'" United States v. Perdomo, 800 F.2d 916, 920 (9th Cir. 1986) (quoting United States v. Dicesare, 765 F.2d 890, 895 (9th Cir. 1985)). Here, defendant contends that two aspects of the wiretap affidavits contain false or misleading statements, warranting a Franks hearing.

    A.    <u>Claims that Electronic Surveillance Fell Short of Achieving Investigative Goals</u>

First, defendant contends that the government's claims in 1996 that electronic surveillance had fallen short of achieving its investigative goals "were patently false or misleading at best" because by 1996, even though new members were being brought into the organization, the government already knew

4

who the bosses were and how they operated.  Defendant has not made a substantial preliminary showing that the government's statements were false or misleading.

Although the government may have known the identities of the bosses of the conspiracy and how they operated by 1996, it does not necessarily follow that the government's statements that electronic surveillance was falling fall short of its investigative goals were false.  The stated investigative goals of the 1996 wiretaps went beyond the mere identification of the leaders of the conspiracy and included, among other things, "the identification of other co-conspirators, aiders and abetters who are acting in concert with the subjects of" the applications.  See, e.g., N.D. Cal. Jan. 19, 1996 Appl. at 14943:15-17; N.D. Cal. Jan. 30, 1996 Appl. at 15150:4-6; E.D. Cal. Feb. 20, 1996 Appl. at 15264:21-24.  Therefore, the government's knowledge of who the bosses of the conspiracy were at the time of the 1996 applications does not preclude a finding that probable cause existed to allow the government to engage in electronic surveillance to pursue the government's other investigative goals, particularly the identification of other conspirators.  Cf. United States v. Sandoval, 550 F.2d 427, 430 (9th Cir. 1977) (upholding wiretap where government sought to apprehend satellite conspirators even though it had already obtained evidence to prosecute main conspirators).  In the absence of any more specific allegations by defendant regarding the alleged falsity of the government's claims that electronic surveillance was falling short of its investigative goals, the court cannot grant a Franks hearing on this claim.

5

B. <u>Claims that Normal Investigative Procedures Would Not Work</u>

Second, defendant apparently contends that the government's claims that normal investigative procedures would not work were false. In a footnote, defendant states that, "[c]uriously, the government continually claimed that 'normal' investigative procedures would not work in their investigation of the narcotics trafficking or computer company robberies despite the fact that the March 5, 1995 heroin distribution involved a sale to an undercover police officer set up by a confidential informant." Defendant also states that the government did not try investigative procedures other than the wiretaps after the fall of 1995. These allegations fall short of establishing defendant's entitlement to a <u>Franks</u> hearing.

First, defendant does not specifically allege which portions of the wiretap affidavits he believes are false or misleading. Second, the success of one undercover drug transaction is irrelevant to whether normal investigative procedures were likely or unlikely to succeed in the computer company robbery aspect of the investigation.

Third, the fact that one undercover officer engaged in a single heroin transaction does not lead to the conclusion that the government lied or misled the courts in its assertions that normal investigative techniques were not working, were unlikely to succeed, or were too dangerous. The government consistently provided the courts authorizing the wiretaps with information regarding the potential use of undercover officers and details regarding transactions set up by confidential informants. <u>See,</u>

6

e.g., N.D. Cal. Aug. 1, 1995 Appl. at 14308:15-14312:16 (summarizing a heroin transaction set up by Confidential Source ["C-S"] 1 and involving an undercover agent); id. at 14336:26-14337:7 (stating that CS-7's attempt to introduce an undercover agent was unsuccessful and that on one occasion, an undercover agent was present at a heroin transaction but was unable to meet with the principal subjects); N.D. Cal. Dec. 8, 1995 Appl. at 14823:20-14824:7 (discussing the difficulty in introducing an undercover agent into the investigation due to the fact that confidential sources had been unable to gain introductions to high-level members of the drug organization).

Fourth, defendant Luong, in an apparent effort to bring more specificity to defendant Le's argument that a Franks hearing is required on this issue, contends that "the government substantially misrepresented the need for continuation of wiretaps after the first two or three months of wiretap orders . . . and the government substantially downplayed and omitted from those later wiretap applications the significance of the information they had already learned through the initial wiretaps as well as through other traditional means of investigation such as interviewing suspects who had been arrested and cooperated with authorities. . . ."[3]

However, the closest defendant Luong comes to

---

[3] Defendant Luong does not characterize his joinder as a supplemental motion. Defendant Luong's argument regarding information the government received from Reth appears to be related to defendant Le's more general argument regarding normal investigative procedures. Therefore, the court will consider defendant Luong's argument on this point as to defendants Luong, Le, Chann, and Huynh.

7

supporting this contention by pinpointing a specific portion of a wiretap affidavit that was allegedly false or misleading is the discussion in his statement of facts of information that the government received from Charlie Reth, a member of the Luong organization who was arrested in September 1995 and provided the government with some information regarding the structure of the robbery organization, and of intercepted calls that corroborated this information and provided further insight into the structure of the robbery organization.

Defendant Luong apparently argues that the government's statements regarding the above facts are misleading because the government downplayed the significance of the information Reth was able to provide. However, the government affiant acknowledged to the authorizing court that Reth indicated to the government that he might "be willing to provide some level of cooperation regarding his involvement in armed robberies of computer chip companies." (N.D. Cal. Sept. 5, 1995 Appl. at 14489:15-19). The affiant further stated that Reth could not provide information regarding the drug trafficking activities, which were also being investigated, or the "entire organization in which Luong operates." (Id. at 14489:19-25). Finally, the affiant noted that because Reth had been arrested, it was unlikely that he would receive information about future robberies being planned by Luong and his associates. (Id. at 14489:25-14490:1).

Defendant Luong does not assert, and there is nothing in the record before this court to indicate, that Reth provided the government with any significant information regarding drug

8

trafficking or the structure of the entire organization.[4] Therefore, defendant Luong has not made a substantial showing the government's statements regarding the limitations of information obtained from Reth were misleading.

Because defendant has failed to make a substantial preliminary showing that any of the statements by the government regarding normal investigative procedures were false or misleading, a Franks hearing on this issue is unnecessary.

II.  Motion to Suppress Evidence From Wiretaps

Motions to suppress evidence from wiretaps are treated the same way as motions to suppress other kinds of evidence. United States v. Losing, 539 F.2d 1174, 1177 (8th Cir. 1976). "An evidentiary hearing on a motion to suppress ordinarily is required if 'the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question.'" United States v. Licavoli, 604 F.2d 613, 621 (9th Cir. 1979). "[E]videntiary hearings should not be set as a matter of course, but only when the petition alleges facts which if proved would require the grant of relief." Cohen v. United States, 378 F.2d 751, 760 (9th Cir. 1967) (internal quotation omitted). Therefore, a hearing is unnecessary when

---

[4] The synopsis of the government's interview with Reth shows that Reth mainly gave the government information regarding the structure of the robbery organization, details of some robberies that took place in 1994 and 1995, and the names of some people involved in the "robbery crews." (Def. Luong's Mot. Ex. A at 97,222-97,224). The only information related to drug trafficking activities is a statement that "'Johnny' and 'Jimmy' work together under 'John'-may have people dealing coke." (Id. at 97,224).

1  suppression is improper as a matter of law.  See Losing, 539 F.2d
2  at 1178.
3      A.   Goals of Wiretap
4           First, defendant contends that the goals of the
5  wiretaps were "so broad that [they] could never be met,"
6  therefore rendering 18 U.S.C. § 2518 "a nullity."  According to
7  defendant, "[t]he electronic surveillance authorized through 1995
8  had met its realistic investigative goals," and after January 1,
9  1996, the government was "manufacturing requisite necessity" by
10 stating that investigative goals had not been met.
11          In the 1996 wiretap applications, the government stated
12 that, among other things, it expected that the intercepted wire
13 communications would concern "the identification of other co-
14 conspirators, and aiders and abettors who are acting in concert
15 with the subjects of this application, including the identity of
16 currently unidentified sources of heroin, and individuals
17 involved in the planning and commission of interstate computer
18 robberies."  See, e.g., N.D. Cal. Jan. 19, 1996 Appl. at
19 14943:15-19; E.D. Cal. Jan. 19, 1996 Appl. at 15057:20-25; N.D.
20 Cal. Jan. 30, 1996 Appl. at 15166:12-16; N.D. Cal. Feb. 16, 1996
21 Appl. at 15364:9-13.  While defendant is correct that many of the
22 members of the Luong organization had been identified by the end
23 of 1995, it does not follow that the government's goal of
24 identifying remaining members of the conspiracy was overbroad or
25 amounts to "manufacturing" necessity.
26          An order authorizing electronic surveillance "'must be
27 broad enough to allow interception of any statements concerning a
28 specified pattern of crime.'"  Licavoli, 604 F.2d at 620 (quoting

10

1  United States v. Tortorello, 480 F.2d 764, 780 (2d Cir. 1973)).
2  Moreover, as the Ninth Circuit has recognized, "[b]ecause the
3  government has a duty to extirpate conspiracy beyond its duty to
4  prevent the mere commission of specific substantive offenses
5  . . . the government is entitled to more leeway in its
6  investigative methods when it pursues a conspiracy." McGuire,
7  307 F.3d at 1198.
8       The mere fact that some of the main conspirators have
9  been identified does not bar the government from using electronic
10 surveillance to identify remaining members of the conspiracy.
11 Cf. United States v. Torres, 908 F.2d 1417, 1422 (9th Cir. 1990)
12 ("We have consistently upheld findings of necessity where
13 traditional investigative techniques lead only to apprehension
14 and prosecution of the main conspirators, but not to apprehension
15 and prosecution of suppliers, major buyers or other satellite
16 conspirators."); Sandoval, 550 F.2d at 430 (stating that
17 "[r]equiring the officers to halt their investigation when they
18 obtained evidence to prosecute only [the main conspirator and his
19 wife] would have frustrated" the objective of apprehending
20 satellite conspirators).
21       In light of the government's duty to eradicate
22 conspiracies, the government's goal of further identifying
23 members of the Luong organization through the use of wiretaps in
24 1996, while broad, was not impermissible.[5]  See McGuire, 307 F.3d

---

[5] Defendant also contends that in no case cited by the government has a wiretap that continued as long as the one in this case been authorized. While this may be the case, the procedures set out in 18 U.S.C. § 2518 for the interception of wire communications guard against the possibility of indefinite

11

at 1198 (stating that the conclusion that the government has more leeway in investigating conspiracies "reflects a larger principle of proportionality embodied in the wiretapping statute: The more grave the threat posed to our society, the greater the government's leeway in pursuing it."); see also Sandoval, 550 F.2d at 431 (noting that "the affidavit, while broad in the sense of the numbers suspected, is narrowly limited to the [the main conspirator] and his underlings and to the one alleged conspiracy").

In a related argument, defendant contends that the government's broad goals resulted in a wiretap of impermissible length in this case. Defendant states that the government fails to cite a case in which a wiretap that continued for as long as the one in this case was authorized. The absence of such a case is insignificant. Congress has chosen to guard against the possibility of indefinite wiretaps not by setting a specific limit on the duration of electronic surveillance, but by requiring a statement of the period of time for interception, by stating that a wiretap may not be authorized "for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than thirty days," and by requiring applications for wiretap extensions to meet the same requirements as initial applications. 18 U.S.C. § 2518. Each of these procedures has been followed here.

---

wiretaps by requiring a statement of the period of time of interception, by stating that a wiretap may not be authorized for "for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than thirty days," and by requiring applications for wiretap extensions to meet the same requirements as initial applications.

1        Moreover, the Ninth Circuit case law cited by defendant
2   does not address the issue of length.  As defendant points out,
3   McGuire "says nothing about authorizing electronic surveillance
4   for almost nine months."  The court cannot interpret this silence
5   as disapproval.  Suppression on the grounds that the government's
6   goals were too broad or that the length of the electronic
7   surveillance in this case was impermissible is therefore
8   improper.
9        B.   Use of Wiretaps to Gather Admissible Evidence
10            Defendant next contends that the necessity requirement
11  was not met because the government rejected traditional methods
12  of investigation "because they did not yield the evidentiary
13  benefits of electronic surveillance, and not because these
14  methods used in conjunction with each other would not have been
15  successful."  In the wiretap applications, the government stated
16  that the intercepted communications were expected to constitute
17  admissible evidence of the commission of the offenses enumerated
18  in the wiretap applications.  See, e.g., N.D. Cal. Jan. 30, 1996
19  Appl. at 15167:20-24 (stating that the communications were also
20  expected to provide "proof beyond a reasonable doubt of the
21  intent of each participant to join the conspiracy and to
22  participate willingly"); E.D. Cal. Feb. 20, 1996 Appl. at
23  15266:6-9 (stating that the communications were expected to
24  provide admissible evidence of the commission of the offenses and
25  proof of intent).
26            Wiretaps "can be necessary if [they] give the
27  government the ability to 'develop an effective case.'" See
28  McGuire, 307 F.3d at 1198 (quoting Brone, 761 F.2d at 1506).  The

McGuire court went on to clarify the Ninth Circuit's holding in Brone and stated that "[b]y an effective case, we meant evidence of guilt beyond a reasonable doubt." Id.  Therefore, the government's expectation that the intercepted communications would provide admissible evidence of defendant's guilt was not impermissible.

        Moreover, defendant's assertion that "[o]ne of the primary reasons" that the government chose wiretaps over other investigative methods was because of the evidentiary benefits of electronic surveillance is unsupported by the evidence before the court.  In the affidavits accompanying the wiretap applications, the government clearly detailed the limitations on traditional investigative techniques.  For example, the government indicated that some of its confidential sources were unwilling to testify, were unavailable for further interviews, did not know the full extent of the organization's operations, and/or were unable to help the government identify Luong's heroin supplier.  See, e.g., N.D. Cal. Aug. 1, 1995 Appl. at 14292:18-20, 14294:15-19, 14295:12-16, 14295:17-21; 14295:26-14296:1; N.D. Cal. March 1, 1996 Appl. at 15676:14-20.  The government also explained various problems with physical surveillance, sting operations, and other investigative techniques.  See, e.g., N.D. Cal. Sept. 5, 1995 Appl. at 14491:4-18 (stating that covert physical surveillance of Luong's residence difficult was because of its location in a sparsely populated new development); E.D. Cal. Jan. 19, 1996 Appl. at 15136:4-19 (stating that Luong was aware of surveillance and that his mother told him not to return home because police were around); N.D. Cal. March 1, 1996 Appl. at 15679:10-17

1  (stating that a sting operation would be counter-productive due
2  to the press coverage of this technique following the arrest of
3  one of Luong's associates).
4         Because of the limitations of traditional investigative
5  techniques, the wiretaps were necessary to enable the government
6  to build an effective case against members of the Luong
7  organization.  Cf. Brone, 792 F.2d at 1506 (upholding wiretap
8  authorization that concluded that no other investigative
9  techniques would allow the government to build an effective case
10 where physical surveillance had not been successful, federal
11 agents had been unable to identify the source of narcotics and
12 details of operation, and pen registers and telephone toll
13 records did not reveal the nature of the business being
14 transacted by telephone).  The fact that gaining admissible
15 evidence was among the expected outcomes of the wiretap
16 investigation does not render the wiretaps unnecessary when there
17 were clear limitations on other investigative techniques.
18 Accordingly, suppression on this ground is improper.
19     C.   Necessity for the Wiretap Extensions
20         Finally, defendant contends that the wiretap extensions
21 were "not supported by requisite necessity."  An application for
22 an extension of a wiretap order must include "a statement setting
23 forth the results thus far obtained from the interception, or a
24 reasonable explanation of the failure to obtain such results."
25 18 U.S.C. § 2518(1)(f).  In addition, the "issuing court is
26 required to make the same findings for an extension order as it
27 is for an original order."  Brone, 792 F.2d at 1506 (citing
28 United States v. Giordano, 416 U.S. 505, 530 (1974)); 18 U.S.C.

15

§ 2518(5)).

In arguing that the necessity requirement was not met in the applications for wiretap extensions, defendant reiterates his arguments that the government knew that its investigative goals could never be met and that the government was using electronic surveillance "to suit its evidentiary needs." As discussed, both the goal of further identifying members of the conspiracy and the use of electronic surveillance to build an effective case were permissible.

In addition, the government's applications for the extension of wiretap orders adequately set forth the results of previous interceptions and included detailed statements as to why normal investigative procedures were unlikely to succeed in this case.[6] See, e.g., E.D. Cal. March 26, 1996 Appl. for an Order Extending Authorization to Intercept Wire Communications at 15956:1-15972:3 (summarizing previously intercepted phone calls to and from the phone number for which the extension was sought); id. at 15978:18-15986:25 (explaining why other investigative techniques such as the use of informants, search warrants, and the grand jury, among others, had been unsuccessful, were unlikely to succeed, or were too dangerous). The government need not exhaust every possible investigative alternative before

---

[6] Defendants rely on Blackmon, 273 F.3d at 1210-1211, for the proposition that boilerplate language regarding why traditional investigative methods have failed, will fail, or are too dangerous is impermissible. As discussed throughout this Order, the government provided detailed information regarding the feasibility of, and results obtained from, traditional investigative methods. Therefore, the affidavits before this court do not suffer from the same deficiencies as those before the Ninth Circuit in Blackmon.

1 | requesting a wiretap. McGuire, 307 F.3d at 1196-97. Because the
2 | extensions satisfied the requirements of 18 U.S.C. §§ 2518(1)(f)
3 | and 2518(5), suppression of evidence obtained from the wiretap
4 | extensions is inappropriate.
5 |     Accordingly, because suppression is improper on any of
6 | the grounds advanced by defendant, an evidentiary hearing on
7 | these issues is unnecessary. See Losing, 539 F.2d at 1178;
8 | Cohen, 378 F.2d at 751.
9 |     IT IS THEREFORE ORDERED that defendant Le's motion for
10 | suppression of evidence from wiretaps be, and the same hereby is,
11 | DENIED.[7]
12 | DATED: February 13, 2003
13 | 
14 | WILLIAM B. SHUBB
    | UNITED STATES DISTRICT JUDGE

---

[7] Accordingly, this motion is also denied as to defendants Luong, Chann, and Huynh.

17

```
                United States District Court
                         for the
                Eastern District of California
                     February 14, 2003


           * * CERTIFICATE OF SERVICE * *


                                      2:99-cr-00433


    USA

       v.

    Luong


_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  February 14, 2003, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.


        William Sze Wong                              SH/WBS
        United States Attorney
        501 I Street
        Suite 10-100
        Sacramento, CA   95814

        Patrick Hanly
        United States Attorney
        501 I Street
        Suite 10-100
        Sacramento, CA   95814

        Richard B Mazer
        Law Offices of Richard B Mazer
        99 Divisadero Street
        San Francisco, CA   94117

        Jan David Karowsky
        716 19th Street
        Suite 100
        Sacramento, CA   95814-0710

        Gail R Shifman
        Law Offices of Gail Shifman
        632 Commercial Street
        Second Floor
```

San Francisco, CA  94111

Shari G Rusk
Law Offices of Shari Rusk
1710 Broadway
Suite 111
Sacramento, CA  95818

Jeffrey L Staniels
Federal Defender
801 K Street
Suite 1024
Sacramento, CA  95814

Michael Bradley Bigelow
Law Offices of Michael Bradley Bigelow
428 J Street
Suite 358
Sacramento, CA  95814-6908

James Ralph Greiner
Law Offices of James R Greiner
555 University Avenue
Suite 290
Sacramento, CA  95825

George C Boisseau
Law Offices of George C Boisseau
50 Santa Rosa Avenue
Fifth Floor
Santa Rosa, CA  95404


Jack L. Wagner, Clerk

BY: _____
Deputy Clerk